

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed June 5, 2024**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 13** |
| | § | |
| **MARIA ROJAS,** | § | **CASE NO. 18-31127-MVL13** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| **MARIA ROJAS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **ADV. PRO. NO. 23-03026-MVL** |
| **MARISOL GOMEZ & JOSUE BENITEZ,** | § | |
| | § | |
| Defendants. | § | |
| | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

The Court conducted a trial to determine the merits of the *Complaint to Avoid Transfer of Property and Determine Title to Property and Motion for Damages Pursuant to 11 U.S.C. Section 362(k)* (the "**Complaint**") filed by Debtor-Plaintiff Maria Rojas (the "**Debtor**" or "**Ms. Rojas**") against Defendants Marisol Gomez ("**Ms. Gomez**") and Josue Benitez ("**Josue Benitez,**" together with Ms. Gomez , the "**Defendants,**" and, together with the Debtor, the "**Parties**").  Josue Benitez appeared *pro se* in this matter.  By her Complaint, the Debtor seeks a judgment vacating a foreclosure sale which occurred on April 3, 2018, and restoring the Parties to the positions they held as of the filing of the bankruptcy petition.  The Debtor alleges that the foreclosure sale was invalid, as it was completed in violation of the automatic stay.  The Debtor seeks compensatory damages for payment of all *ad valorem* taxes which accrued while the property was under the ownership of Defendants, approximately $20,686.95, as of March 31, 2024.  The Debtor also seeks punitive damages under 11 U.S.C. §§ 105 and 362(k) totaling $20,000.00.  The Debtor further requests that her attorneys' fees and costs, totaling $27,050.27 be shifted to the Defendants.

Although the Defendants do not dispute the fact that the foreclosure was conducted and concluded in violation of the automatic stay, the Defendants allege that they were not aware of the commencement of the bankruptcy case or the existence of the automatic stay at the time of the foreclosure sale.  Therefore, the Defendants argue that Plaintiff has insufficient evidence to prove actual damages under 11 U.S.C. § 362(k).  Additionally, the Defendants assert that the Court should deny the Debtor punitive damages and attorney's fees pursuant to the doctrine of laches or because the Plaintiff failed to take reasonable steps to mitigate any damages.  Separately, Josue Benitez alleges that he was not directly involved in either the sale of the home or the foreclosure sale, and that instead his brother, Jorge Benitez (who was married to Ms. Gomez at the time), was "using his name" during these events and posing as Josue Benitez in order to utilize his social

security number and status as a legal resident of the United States in conducting those transactions.

Therefore, he requests leniency from the Court in its ruling because he did not participate in the

underlying transactions in any meaningful way.

The Court has considered the pleadings and all briefing filed in this adversary proceeding,

the testimony of witnesses, the exhibits admitted into evidence, and the arguments of counsel. The

following constitutes the Court's findings of fact and conclusions of law[1] in support of its ruling

as required under Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding

by Federal Rule of Bankruptcy Procedure 7052.[2]

## I.    JURISDICTION AND VENUE.

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §

1334.  This is a core proceeding under 28 U.S.C. § 157(b).  The bankruptcy court has authority to

adjudicate this matter pursuant to the United States District Court for the Northern District of Texas

Miscellaneous Order No. 33.  The Parties have consented to the Court hearing this matter and

determining the issues on a final basis.

## II.    PROCEDURAL POSTURE.

On March 9, 2023, Ms. Rojas filed her Complaint.  *See* ECF No. 1.  This Court issued a

summons to the Defendants, which was served on them at their places of residence on March 14,

2023.  *See* ECF Nos. 5 and 6.  Ms. Gomez filed her *Answer and Affirmative Defenses to Complaint*

*to Avoid Transfer of Property and to Determine Title to Property and, Motion for Damages*

*Pursuant to 11 U.S.C. Section 362(k)* on April 13, 2023.  ECF No. 7.

---

[1] Any finding of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.
[2] Any capitalized reference to a "Rule" or the "Rules" shall hereinafter be made in reference to the Federal Rules of Civil Procedure (a "**Rule**" or the "**Rules**").  Likewise, any capitalized reference to a "Bankruptcy Rule" or the "Bankruptcy Rules" shall hereinafter be made in reference to the Federal Rules of Bankruptcy Procedure (a "**Bankruptcy Rule**" or the "**Bankruptcy Rules**").

Josue Benitez initially failed to respond to the Complaint, and on April 21, 2023, Mr. Lawrence Herrera ("**Mr. Herrera**"), the Debtor's bankruptcy counsel, filed a *Motion for Clerk's Entry of Default as to Josue Benitez*. *See* ECF No. 8. A *Clerk's Entry of Default* was entered on April 24, 2023, as to Josue Benitez. *See* ECF No. 9. No party thereafter moved for default judgment against Josue Benitez. On September 11, 2023, Josue Benitez filed a *Letter Regarding Address Change*, requesting that the Court notify him of any changes regarding this case. ECF No. 18. A little over two weeks later, Josue Benitez filed his *Answer and Affirmative Defenses to Complaint to Avoid Transfer of Property and to Determine Title to Property and, to Motion for Damages Pursuant to 11 U.S.C. § 362(k)* (the "**Answer**") and the *Defendant's Explanation to the Court Regarding Late Response*. *See* ECF Nos. 21 and 22. On November 8, 2023, Josue Benitez submitted a document to the Court which appears to be a Warranty Deed dated October 27, 2023, signed by Josue Benitez, transferring his interest in the Property to Ms. Gomez. *See* ECF No. 25. One week later, Josue Benitez filed his *Motion of Defendants (I) for Partial Dismissal of the Trustee's Adversary Complaint Pursuant to Rule 12(b)(6); and (II) to Compel a More Definite Statement Pursuant to Rule 12(e)* (the "**Rule 12 Motion**"). *See* ECF Nos. 26 and 27. The Debtor filed an objection thereto. *See* ECF Nos. 29 and 30.

At trial docket call, on December 5, 2023, the Court heard argument from each of the three parties on the Rule 12 Motion. The Court took that matter under advisement and set a trial date of Tuesday, February 13, 2024, for the Complaint. On December 13, 2023, the Court issued its *Order on Defendant's Rule 12 Motion*, denying the requested relief. The Court separately encouraged Josue Benitez to retain legal counsel ahead of trial in this matter.

The Court conducted a trial on this matter on February 13, 2024. Ms. Rojas and Ms. Gomez were represented by legal counsel, but Josue Benitez appeared *pro se*. Because each of the Parties

are native Spanish speakers, professional interpreters were employed.  After the presentation of evidence was concluded, the Court permitted post-trial briefing within 14 days of the conclusion of the trial.  The Parties timely submitted their post-trial briefs.  Josue Benitez submitted his *Letter to the Court* on February 16, 2024.  ECF No. 53.  The Debtor submitted her *Post-Trial Brief of the Plaintiff Maria Rojas* on February 20, 2024.  ECF No. 56.  Ms. Gomez filed her *Closing Argument for Defendant Gomez* on February 27, 2024.  ECF No. 57.

## III.   FINDINGS OF FACT.

### A.  The Parties

The Debtor, Maria Guadalupe Rojas, is an individual residing in Dallas, Texas.  She currently lives at 2235 Scotland Road, Dallas, TX 75126 (the "**Property**") and has resided there since June of 2017, and she does not own any other real estate.  Ms. Rojas is employed as a hairdresser.  Ms. Rojas is the Plaintiff in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), and the Debtor in Bankruptcy Case No. 18-31127-mvl13 (Bankr. N.D. Tex. 2018).[3]

Marisol Gomez is an individual residing in Dallas, Texas.  Ms. Gomez currently lives at 10611 Elam Road, Dallas, TX 75217.  At the time that the Property was sold to Ms. Rojas, Ms. Gomez was married to Jorge Ramiro Benitez ("**Jorge Benitez**"), who is the brother of Defendant Josue Benitez and who, according to witness testimony, was deported to Mexico some time in 2017.[4]  Ms. Gomez has five children and does not currently have a job.  Ms. Gomez testified that she has no formal training in either real estate transactions or legal matters.

---

[3] Hereinafter referred to as the Bankruptcy Case (the "**Bankruptcy Case**").
[4] The Court notes that the witness testimony provided in Court did not clearly establish whether Ms. Gomez and Jorge Benitez are still married, separated, or divorced.

Josue Benitez is an individual residing in Dallas County, Texas.  Josue Benitez currently lives at 215 Hamden Lane, Mesquite, TX 75149.  Josue Benitez is married and has three children.  His brother is Jorge Benitez, who was married to Ms. Gomez at the time the Property was sold to Ms. Rojas.  Josue Benitez informed the Court that he suffers from depression.

### B.  Factual Backround

The Debtor purchased the Property on June 6, 2017.  Ms. Rojas testified that she purchased the home from a client of hers at the hair salon, Jorge Benitez.  Title to the Property was conveyed to the Debtor via a Warranty Deed (the "**Warranty Deed**") listing Josue Benitez and Marisol Gomez as grantors.  *See* ECF No. 32-2.  The Debtor signed a Promissory Note (the "**Note**") dated June 1, 2017, requiring her to pay Josue Benitez and Marisol Gomez a principal amount of $75,100.00 in 132 installments, with an annual interest rate of nine percent (9%).  *See* ECF No. 32-1.  The Note was secured by a Deed of Trust (the "**DOT**") signed by Ms. Rojas on June 6, 2017, before a Notary Public, Ms. Yanet Vargas Rojas.  *See* ECF No. 32-3.  The DOT lists Michael Ulmer as the Trustee (the "**Trustee**").  *Id.* at 1.

The Debtor testified that she had a disagreement with Ms. Gomez and her husband about the condition of the Property when it was turned over in 2017 and that she had to pay to improve the condition of the Property in order to make it suitable for her to move in.  Ms. Rojas fell behind on payments, which prompted Ms. Gomez to begin non-judicial foreclosure proceedings.  A foreclosure sale was scheduled for April 3, 2018.  On April 2, 2018, Ms. Rojas filed a voluntary bankruptcy petition.  *See* ECF No. 32-4.  Ms. Rojas testified that her sole motivation for filing the Bankruptcy Case was to save her home from foreclosure.  That same day, Mr. Herrera sent a fax to the Trustee in response to the *Notice of Trustee's Sale* that had been sent to the Debtor on March

9, 2018, attaching the Notice of Commencement.[5]  The foreclosure proceedings went forward on

April 3, 2018, and ultimately the Defendants were recorded to have purchased the Property at

foreclosure. *See* ECF No. 32-8, p. 1 ("Buyer: JOSUE BENITEZ; MARISOL GOMEZ").

The Notice of Commencement was mailed to the Defendants at 10611 Elam Road, Dallas,

TX 75217, the same address where Ms. Gomez currently resides, on April 4, 2018, by the Clerk

of Court. *See* ECF No. 32-7, p. 3.  Nevertheless, a substitute trustee's deed (the "**Trustee's Deed**")

was signed on April 3, 2018, and recorded on April 6, 2018, transferring legal title to the Property

into the Defendants' names. *See* ECF No. 32-8.  On April 20, 2018, the Defendants sent Ms. Rojas

a letter attempting to evict her from the Property (the "**Eviction Notice**"), stating that she had until

April 30, 2018, to leave the Property.  *See* ECF No. 32-9.  Mr. Herrera testified that he contacted

the Trustee on April 27, 2018, regarding the Eviction Notice.  After having a conversation with

the Trustee, Mr. Herrera testified that it was his understanding that the Trustee and Defendants

would work together with the Debtor in order to rescind the Trustee's Deed and put legal title to

the Property back in her name in order to restore the "status quo."[6]

Katherine O'Brien ("**Ms. O'Brien**"), counsel for Ms. Gomez, attended the section 341

meeting of creditors on May 10, 2018 (the "**Initial 341 Meeting**"), and the continued meeting on

May 31, 2018, (the "**Continued 341 Meeting**").[7]  The presiding officer for the Continued 341

---

[5] *See* ECF No. 32-6.  The Court will note that the Fax Cover Sheet lists the incorrect bankruptcy case number, but also states that Mr. Herrera attached the "first page of the bankruptcy petition and the notice of filing by electronic means for the above-referenced debtor(s)." Notably, what Mr. Herrera refers to as the "notice of filing by electronic means" is the *Notice of Chapter 13 Bankruptcy Case* (hereinafter, the "**Notice of Commencement**"), which was admitted as an exhibit at ECF No. 32-7. The Notice of Filing contains specific language informing creditors of the imposition of the automatic stay and how that affects a creditor's rights with respect to collection activities.

[6] At trial, Ms. Gomez testified that she believed the Trustee should have filed a rescission of the Trustee's Deed within fifteen days of the sale after being notified about the Bankruptcy Case.  However, any attempt to shift blame to the Trustee in this matter for failing to rescind the sale falls flat, as the Defendants had the same statutory ability (and obligation) to rescind the Trustee's Deed. *See* TEX. PROP. CODE § 51.016(b)(6) ("*a mortgagee* … may rescind the sale under this section if … at the time of the sale, a court-ordered or automatic stay of the sale imposed in a bankruptcy case filed by a person with an interest in the property was in effect.") (emphasis added).

[7] *See* ECF No. 10 in Bankruptcy Case No. 18-31127-mvl13 (Bankr. N.D. Tex. 2018); *see also* ECF No. 32-11.

Meeting noted that "Jose and Natalie Benitez also appeared." ECF No. 32-11, p. 1. The Court believes that this note was actually a reference to Josue Benitez and his wife. Mr. Herrera testified to the same belief, based on his recollection that Josue Benitez attended the Continued 341 Meeting. On June 12, 2018, Anthony Farmer and Ms. O'Brien filed a *Notice of Appearance and Request for Service of Notice and Pleadings* in the Bankruptcy Case on behalf of Ms. Gomez. *See* ECF No. 32-12. The same day, Ms. O'Brien filed a proof of claim in the Bankruptcy Case on behalf of Ms. Gomez, noting a secured claim in the amount of $144,872.00.[8] *See* ECF No. 32-14. On June 13, 2018, Ms. Rojas' Chapter 13 Plan was confirmed by order of the Court. *See* ECF No. 32-15.

As evidenced by e-mail exchanges between Mr. Herrera and Ms. O'Brien, the Trustee's Deed had not been rescinded by February 27, 2019, approximately eleven months after the petition date. *See* ECF No. 32-13, p. 10. Mr. Herrera requested Ms. O'Brien file a Notice of Rescission of Trustee's Deed in order to rectify the issue and restore title in Ms. Rojas name because "[Ms. Rojas] is having issues with property taxes/homestead exemption[.]" *Id.* In that e-mail, Mr. Herrera mentioned that Ms. Rojas wanted him to pursue the Defendants for a violation of the automatic stay for retaining control of property of the bankruptcy estate. *Id.* Ms. O'Brien acknowledged by reply e-mail that she would discuss the issue with Ms. Gomez and ask her to sign the Notice of Rescission. *Id.* at 8. The last evidence of any interaction between Mr. Herrera and Ms. O'Brien regarding this issue is dated March 6, 2019, an e-mail, wherein Ms. O'Brien states that she is having trouble getting the document opened. *Id.* Mr. Herrera testified that it was his recollection that he followed up with Ms. O'Brien regarding this issue but could not provide the Court with any further detail. Mr. Herrera also could not explain why there is no record of him

---

[8] Ms. Gomez' proof of claim was amended a number of times. The final proof of claim (Proof of Claim 3-4) was filed on December 30, 2020, and reflected a total amount of $76,776.00, only $45,100.00 of which was secured.

making any further attempt to resolve the title issue with the Farmer Law Group since 2019.  When cross-examined on this point, Mr. Herrera's only response was that he was hoping to avoid further litigation.

On the eve of completing her bankruptcy, on February 22, 2023, the Debtor filed the *Motion for Damages for Automatic Stay Violation Pursuant to 11 U.S.C. Section 362(k) against Marisol Gomez, Josue Benitez, and the Farmer Law Group, PLLC.*[9]   However, the Debtor withdrew the motion shortly thereafter and instead filed the instant Complaint, commencing the Adversary Proceeding.  Over the course of five years, the Debtor successfully navigated her Chapter 13 bankruptcy and received a discharge on June 20, 2023.  Throughout that period, the Debtor consistently made her plan payments and otherwise conformed to the requirements of the Bankruptcy Code.  Ms. Rojas testified that while the Property was in her name, she paid $1,203.00 in property taxes.  She further testified that when she tried to make her next property tax payment, while her Bankruptcy Case was ongoing, the tax office rejected her payment because the Property was no longer in her name.  A recent Tax Statement for the Property demonstrates that there is over $20,000.00 in overdue property taxes.  *See* ECF No. 50-1.

### C.  Witness Credibility Determinations

Much of the evidence upon which each side relies is based upon witnesses' testimony of their best recollection of events, representations of counsel, and interactions between witnesses and individuals who were not made available to testify in Court, such as the Trustee or Ms. O'Brien.  Compounding this issue is the fact that the events underlying this Adversary Proceeding began over half a decade prior to the commencement of this action, which means that much of the testimony that was elicited is somewhat less credible than it might have been had these proceedings

---

[9] *See* ECF No. 51 in Bankruptcy Case No. 18-31127-mvl13 (Bankr. N.D. Tex. 2023).

taken place in years prior.  The Court closely monitored and evaluated the apparent truthfulness of each witness in delivering answers to questions and noted any instances where trial testimony departed materially from prior representations in pleadings or the material evidence admitted to the Court's record and factored each of these into its decision.

Further complicating these credibility determinations was that each of the Parties are native Spanish speakers.  To be certain, the interpreters employed for the purpose of eliciting trial testimony were skilled, professional and efficient, but the Court notes that in any situation where the Court must rely upon an interpretation from one language to another, there are instances where meaning can be misinterpreted and/or lost.

    1.  <u>The Debtor</u>

The Court finds that the Debtor, Maria Rojas, was generally a credible witness. The Debtor appeared to answer questions posed to her truthfully and to the best of her recollection.  Although there were some inconsistencies between representations made in the pleadings and her trial testimony, the Court was not persuaded that these inconsistencies were indicative of a lack of credibility, but more attributable to slight failures of memory, which were common to each and every witness that testified.  Further, the Court will note that certain facts came to light as a result of Ms. Rojas' trial testimony that were not discussed by either party prior to the proceeding, such as the fact that Ms. Gomez and *her husband*, Jorge Benitez, were the ones who arranged to sell the Property to her, rather than Josue Benitez.  Nevertheless, the Debtor credibly testified as to the circumstances surrounding her bankruptcy filing and the situation that underlies the instant Adversary Proceeding. The Debtor's credible testimony, coupled with the evidence showing the Defendants were served with the Notice of Commencement, significantly undermined the

Defendants' allegations that they were unaware of the imposition of the automatic stay prior to their attempt to evict the Debtor.

    2.  <u>Marisol Gomez</u>

The Court finds that Ms. Gomez' credibility was questionable. Ms. Gomez appeared to answer questions truthfully to the best of her recollection for the majority of her testimony, but exhibited certain instances of recalcitrance and inconsistency, particularly on cross-examination, when forced to discuss inconvenient truths. For instance, when questioned about her husband, Jorge Benitez, Ms. Gomez was generally straightforward in answering that he has not been in this country for some time since he had been deported to Mexico. Furthermore, Ms. Gomez straightaway confirmed that her husband was the one who set up the deal and sold the Property to Ms. Rojas, and that Josue Benitez' name was only utilized because her husband was not a U.S. citizen and therefore lacked a social security number.

However, when pressed on why Josue Benitez' name or social security number was necessary for the purpose of the real estate sale, Ms. Gomez could not supply an answer. Further, although Ms. Gomez was quick to confirm that Josue Benitez had never received any payment from the Property, Ms. Gomez could not answer the Court's questions about where the majority of the $59,600.00 in payments during the pendency of the Bankruptcy Case had gone. For instance, Ms. Gomez testified that she had traveled to Mexico for several years and that while she was gone, she believed that her family simply "threw away" all of her mail. She further testified that while she had received some of the payments from the Chapter 13 Trustee while she was in Mexico, at some point, she stopped receiving payments.[10] She testified that the "checks were lost" because she "didn't get them" because someone had "changed the address." When asked whether

---

[10] The Standing Chapter 13 Trustee assigned to this case is Mr. Thomas D. Powers. Hereinafter, he shall be referred to hereinafter as the Chapter 13 Trustee (the "**Chapter 13 Trustee**").

she had approached the Chapter 13 Trustee about this problem, Ms. Gomez replied in the affirmative, and testified that she had returned from Mexico for this purpose.  She testified that the Chapter 13 Trustee had helped to correct the payment issue by making sure that payments were being delivered to her correct address. However, despite the Court's questioning, Ms. Gomez failed to clarify whether the missed payments had been accounted for or who had received those payments in the intervening period.

### 3.  Josue Benitez

The Court finds that Josue Benitez was generally a credible witness, although he was facially distraught about the proceedings and claimed to be suffering from anxiety and depression, which the Court had no reason to doubt.  Josue Benitez credibly testified several times that he had no dealings with Ms. Rojas prior to the Bankruptcy Case. Josue Benitez consistently asserted that he has never received any benefit or payment as an owner of the Property, which was corroborated by Ms. Gomez.  Josue Benitez testified that he took no part in the sale of the Property or in any negotiations prior to the sale.  Rather, he asserts that the only reason his name was used on any of the documents, including the Warranty Deed, the Note, and the DOT was because he "lent his name" to his brother so that Jorge Benitez would be able to gain the benefits of Josue Benitez' citizenship and social security number.

However, the Court finds that some inconsistencies persist amongst Josue Benitez' witness testimony, the documentary material evidence, and his original pleadings in this case. For instance, although Josue Benitez testified that he only "lent his name" to his brother and never took any part in the sale of the home, the Court notes that the Warranty Deed was signed by Josue Benitez before a Notary Public, which would have required him to present identification before signing the deed. Furthermore, although Josue Benitez repeatedly testified that the "only reason" he was involved

with the ownership of the home was so that his brother could use his legal name and social security number, in his Rule 12 Motion, he represented to the Court that "I am only in the title of this house for family reasons *since my brother owes me money and was deported*." *See* ECF No. 26, p. 2 (emphasis added).  Similarly, in Josue Benitez' Answer, he states "I would like to claim new and old monthly payments of the property … because I haven't been getting any half or full monthly payments *due to Marisol Gomez not wanting to give me anything.*" *See* ECF No. 21, p. 2 (emphasis added).

        4.  <u>Lawrence Herrera</u>

The Court finds that Mr. Herrera was a credible witness.  The only weakness to Mr. Herrera's testimony is due to the considerable amount of time that has passed since his initial dealings with Ms. Rojas and Ms. O'Brien, as counsel to Ms. Gomez.  The Court finds that Mr. Herrera's reticence on cross-examination about his reasoning for declining to reach back out to the Farmer Law Group on behalf of Ms. Rojas after 2019 is not indicative of a lack of credibility, but more likely attributable to the nature of consumer bankruptcy practice, which largely results in a less active approach to cases after the confirmation stage of the case.  Mr. Herrera's e-mail correspondence with Ms. O'Brien reflects that Mr. Herrera made some attempt to rectify his client's interests regarding the title issue with Ms. Gomez, but after a certain point, the ball was in Ms. O'Brien's court, who left the firm unbeknownst to Mr. Herrera.  Mr. Herrera testified that he chose to wait rather than pursue more expensive litigation during the course of the bankruptcy.

**IV.    CONCLUSIONS OF LAW.**

Benjamin Franklin once remarked, "in this world, nothing can be said to be certain, except death and taxes."[11]  At least one aspect of this age-old adage is brought to the fore in the instant

---

[11] Benjamin Franklin, *Letter to Jean Baptiste LeRoy, Nov. 13, 1789*, *in* THE WRITINGS OF BENJAMIN FRANKLIN 10 (Albert Henry Smyth ed., 1907).

controversy: the inescapability of taxes.   Specifically, this Adversary Proceeding concerns a challenge to the validity of a foreclosure sale and the subsequent recording of the Trustee's Deed in the rolls of the Dallas County property records.   If the foreclosure sale were to be declared invalid, the Debtor seeks a judgment that she should not be held liable for the property taxes assessed during the period in which the Defendants held title to the Property.   Separately, the Debtor seeks a judgment that the Defendants intentionally violated the automatic stay.   The Debtor requests that the Court award her compensatory damages in the amount of the delinquent property taxes, shift the burden of her attorney's fees and costs to the Defendants, and separately award punitive damages in the amount of $20,000.00.

Ms. Gomez, on the other hand, argues that even were the Court to find that her actions violated the automatic stay and that those actions were willful, the Debtor cannot prove that she has suffered any actual damages.   Ms. Gomez asserts that she has only acted in good faith and has always intended to put title to the Property back into Ms. Rojas' name, but that for some reason, the attorneys failed to finish the task they set out to accomplish.   As such, Ms. Gomez requests that the Court decline to award either monetary damages or attorney's fees and costs, because pursuant to 11 U.S.C. § 362(k), attorney's fees and costs are only allowable as additive costs to actual damages, which Ms. Gomez contends cannot be established here.   Josue Benitez, in turn, requests that the Court deny a damages award, as he contends that he never received any benefit from the Property and therefore should not be liable for any violation of the automatic stay.

### A.  Violation of the Automatic Stay

When a bankruptcy case is filed, section 362 of the Bankruptcy Code automatically imposes a stay against "any act to obtain possession of property of the estate … or to exercise control over property of the estate[,]" and further stays "any act to … enforce any lien against

property of the estate." 11 U.S.C. §§ 362(a)(3) – (4). "Such actions are invalid, whether or not a creditor acts with knowledge of the stay." *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004) (citing *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990), *cited with approval in In re Jones*, 63 F.3d 411, 412 n. 3 (5th Cir. 1995)). Under certain conditions, when a party pursues retroactive annulment or modification of the automatic stay, a court may grant relief from a stay by "terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d); *see also Cueva*, 371 F.3d at 236. In this case, however, no party requested retroactive relief from the stay, and no relief was granted. Therefore, the Court concludes that the foreclosure sale conducted on April 3, 2018, and the Trustee's Deed filed in the Dallas County property records are null and void.

The Bankruptcy Code creates a private right of action for a debtor, like Ms. Rojas, to "bring an action against a person who willfully violates the automatic stay to the injury of the debtor."[12] There are three elements that must be established in order for Ms. Rojas state a claim under section 362(k): (1) the Defendants must have known of the existence of the stay; (2) the Defendants' actions must have been intentional; and (3) the Defendants' actions must have violated the stay. *See In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005). After a review of the facts of this case, the Court concludes that Ms. Rojas has proven all three of the necessary elements.

### 1. Defendants Had Actual Notice of the Bankruptcy

The evidence clearly establishes that the first element is fulfilled as the Defendants undoubtedly knew of the existence of the stay. No reasonable argument could possibly be made to the contrary. Both Defendants were mailed the Notice of Commencement on April 4, 2018, by the Clerk of Court. The Defendants each attended at least one of the section 341 meetings in

---

[12] *See In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008); *see also* 11 U.S.C. § 362(k) ("an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.").

person.  Ms. Gomez retained counsel.  Ms. Gomez' attorney, Ms. O'Brien, filed a proof of claim

in the Bankruptcy Case on her behalf and amended that proof of claim three subsequent times.

Ms. Gomez received plan payments from the Chapter 13 Trustee.

2.  Defendants' Actions Were Intentional

As to whether the Defendants' actions were intentional, the Court notes that under Fifth

Circuit precedent, "a willful violation does not require a specific intent to violate the automatic

stay." *Chesnut*, 422 F.3d at 302.  "Rather, the statute provides for damages upon a finding that the

defendant knew of the automatic stay and the defendant's actions which violated the stay were

intentional."  *Id.*  Here, the initial actions taken in violation of the automatic stay were (1) the

purchase of the Property at foreclosure and (2) the drafting and sending of the Eviction Notice,

both of which occurred after the imposition of the automatic stay.  It is undisputed that Ms. Gomez

purchased the Property at the foreclosure sale intentionally.  She testified to the same before the

Court.  Similarly, Ms. Gomez testified that she herself approached the notary public about drafting

the Eviction Notice and that she herself was the one who sent the Eviction Notice to Ms. Rojas.  It

is unclear to the Court from the record before it whether Josue Benitez actively participated in the

foreclosure and the subsequent eviction attempt.  For instance, the Trustee's Deed is signed only

by the Trustee.  No witness testified to the effect that Josue Benitez appeared at the foreclosure

sale or helped in the drafting of the Eviction Notice.  Therefore, the Court is left with inconclusive

evidence as to whether Josue Benitez intended to take any action in violation of the automatic stay,

*at least initially*.

However, it is well-established that after learning of the existence of the automatic stay, a

creditor is required to return the Debtor's estate to status quo, otherwise even an innocent violation

of the automatic stay may constitute a willful violation.[13]  Although the Fifth Circuit has not opined

on this matter directly, in *Chesnut*, the court laid out the reasoning why the automatic stay protects

even arguable property of the estate.

> Knowing a debtor is in a difficult pecuniary condition and may not be able to
> vindicate his rights in a later adversary proceeding, *a creditor could simply seize*
> *arguable property without fear of later judicial retribution. Or the creditor could*
> *gamble that a court would accept legal arguments long after foreclosure … when*
> *the harm may be more difficult to remedy.*

422 F.3d at 304 (emphasis added).  Thus, the Fifth Circuit ultimately concluded that *post facto*

relief from the automatic stay is inadequate.  *Id.*

In keeping with this policy, courts around the country have held that there is an affirmative

duty for a creditor to take action to rectify prior violations of the automatic stay.[14]  For instance,

the First Circuit, in *In re McMullen*, stated that "[a] creditor that commits a technical violation of

the automatic stay, due to lack of notice, has an affirmative duty to remedy the violation as soon

as practicable after acquiring actual notice of the stay." 386 F.3d 320, 330 (1st Cir. 2004).  The

Seventh Circuit has similarly held that a "creditor has an affirmative duty to undo acts which

violate the stay, even if she had no actual notice of the bankruptcy at the time the acts were

performed." *Smith v. Albert (In re Smith)*, 111 F.3d 133 (7th Cir. 1997).  The Eleventh Circuit, in

*Jove Engineering, Inc. v. I.R.S.*, held the Internal Revenue Service in contempt of court and levied

sanctions for willfully violating the automatic stay where its failure to correct "known, glaring

---

[13] *See In re Freemyer Industrial Pressure, Inc.*, 281 B.R. 262, 267–68 (Bankr. N.D. Tex. 2002) (gathering cases); *see also Commercial Credit Corp. v. Reed*, 154 B.R. 471, 476 (E.D. Tex. 1993) ("The case law indicates that a creditor must act *immediately* to restore the status quo once it learns that it has violated the stay."); *In re Wariner*, 16 B.R. 216, 218 (Bankr. N.D. Tex. 1981) ("A creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay.").

[14] *See Sternberg v. Johnston,* 595 F.3d 937, 945 (9th Cir. 2010) *cert. denied*, 562 U.S. 831 (2010) (holding that a creditor who had acted in violation of the automatic stay had an "affirmative duty" under the automatic stay "to do what he could to relieve the violation."); *In re Gordon Properties, LLC*, 460 B.R. 681, 694 (Bankr. E.D. Va. 2011) (gathering cases); *see also In re Weatherford*, 413 B.R. 273, 287 (Bankr. D.S.C. 2009) (finding defendants' failure to vacate or cancel a state court judgment which violated the stay despite having been advised to do so by debtor's counsel to constitute a willful violation of the automatic stay).

weaknesses in its internal controls" repeatedly resulted in violations of the automatic stay, citing to numerous cases where such inaction had violated the automatic stay prior to the circuit court's holding.  92 F.3d 1539, 1556–57 (11th Cir. 1996).

Therefore, although Josue Benitez may not have benefited from the mortgage payments made by Ms. Rojas, the Court finds that he was certainly provided with notice that actions taken in his name had violated the automatic stay.   Josue Benitez was mailed the Notice of Commencement at the beginning of the Bankruptcy Case, he attended the Continued 341 Meeting with Ms. Gomez and her attorney, and he was given an opportunity to either hire counsel to correct this situation or to approach the Debtor's counsel or the Chapter 13 Trustee about rectifying the situation.  Instead, he chose to stay silent and allow the title to the Property to remain in his name. Moreover, when he belatedly chose to make an effort to transfer title out of his name (during the course of these proceedings), it was to Ms. Gomez rather than Ms. Rojas.  In light of the foregoing, the Court finds that Josue Benitez' action, or inaction in this case, was intentional.

3.  <u>Defendants' Actions Violated the Stay</u>

In light of the foregoing, the Defendants cannot reasonably argue that their actions did not violate the automatic stay.  Proceeding with the foreclosure undisputedly altered Ms. Rojas' rights as owner of the Property.  Neither Defendant sought permission from this Court to lift or annul the automatic stay once they had notice of the Bankruptcy Case.  Both Defendants, having received notice of the Bankruptcy Case, had a responsibility to return the Debtor's estate to status quo after learning of the automatic stay.  Neither took any definitive action to restore that status quo, despite being required to do so under the law.[15]  It has been over six years since Ms. Rojas has actively

---

[15] *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) (holding that a secured creditor with property included in a bankruptcy estate must look to the adequate protection provisions of the Bankruptcy Code, rather than pursuing the nonbankruptcy remedy of maintaining possession over said property).

enjoyed her full bundle of rights as a property owner in Texas. In that time, despite continuing to hold title in their names, neither Defendant ever paid the *ad valorem* property taxes. The Defendants' cumulative inaction has forced Ms. Rojas to take legal action in order to enforce her rights to the Property and resolve this matter before one of the taxing authorities sought to foreclose on the Property. Therefore, the Court concludes that the third element is satisfied. The Court now turns to the calculation of damages.

### B. Damages

Overall, Ms. Rojas requests the Court award her the following damages: (1) payment of all *ad valorem* taxes which accrued while the property was under the ownership of Defendants, or approximately $20,686.95 as of March 31, 2024; (2) all attorney's fees and costs incurred by Ms. Rojas on this matter, including $2,750.00 for Mr. Herrera and $24,300.27 for Newtons Law, for a total of $27,050.27; and (3) punitive damages pursuant to 11 U.S.C. §§ 362(k)(1) and 105 totaling $20,000.00. The Court shall take up each category of damages in turn.

### 1. Compensatory Damages – Delinquent *Ad Valorem* Property Taxes

Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs, and attorneys' fees be mandatory upon a willful violation of the stay." *In re Wilson*, 610 B.R. 255, 277 n. 85 (Bankr. N.D. Tex. 2019) (Morris, J.) (citing *In re Garza*, 605 B.R. 817, 829 (Bankr. S.D. Tex. 2019)). Here, Ms. Rojas testified to the fact that she suffered actual damages due to her inability to seek a homestead exemption on the Property, pay the property taxes in due course and, perhaps more poignantly, exercise her full rights as owner of the Property free and clear of any cloud on title.

19

When the Defendants recorded the Trustee's Deed after the foreclosure sale, it created a "cloud" on Ms. Rojas' legal title to the Property which would, otherwise, have remained free and clear.[16] Resulting from this, Ms. Rojas testified that she has been unable to procure homeowner's insurance since owning the home, despite having made attempts to do so. However, Ms. Rojas provided no means of calculating actual damages for her inability to gain insurance on the Property, nor did Ms. Rojas testify that she ever sought to apply for a homestead exemption from the taxing authority. Instead, Ms. Rojas requests an award of only one category of compensatory damages: the past due *ad valorem* property taxes assessed on the Property from tax years 2019 through 2023.

The Debtor argues that under the Texas Tax Code, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed." *See* ECF No. 56, p. 3, ¶ 10 (citing TEX. TAX CODE § 32.07(a)). The Debtor argues that Texas courts construe the term "owner" as used in the section of the Texas Tax Code as "a person or entity holding legal title to the property[.]" *Id.* (citing *Comerica Acceptance v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App. —Dallas 2001, pet. denied)). As the purported "owners" of the Property, after the Trustee's Deed was recorded, the Defendants were sent property tax statements at Ms. Gomez' address. *See, e.g.,* ECF No. 50-1. The Debtor points out that the Defendants failed or refused to pay those same *ad valorem* property taxes, despite the tax statements being sent to them, listing them as the owners. Further, Debtor argues that because Defendants failed to notify Ms. Rojas of the accruing taxes and never filed supplemental claims in the Bankruptcy Case regarding those taxes, they were holding themselves out as "owners" for all

---

[16] A "cloud" on legal title includes "any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof." *Svoboda v. Bank of America, N.A.*, 964 F.Supp.2d 659, 672–73 (W.D. Tex. 2013).

intents and purposes and they should be on the hook for the past-due balance.  ECF No. 56, p. 3, ¶¶ 9–10.

Ms. Gomez, on the other hand, argues that Ms. Rojas has failed to provide any evidence that an actual injury was sustained.  *See* ECF No. 44, p. 6, ¶ 24.  To wit, Ms. Gomez argues that the Debtor freely enjoyed possession and control of the Property without making a single payment towards property taxes for years.  *Id.* at 7, ¶ 25.  Ms. Gomez posits that because the Debtor never filed for a homestead exemption, any purported damages from being unable to claim said exemption would be speculative, at best.  *Id.*  Moreover, Ms. Gomez asserts that the Debtor is barred from relief under the doctrine of laches, which bars recovery when a claim holder sits on their rights for an unreasonable time, prejudicing the opposing party.  *Id.* at 8, ¶¶ 27–29.  Ms. Gomez further contends that the Debtor, as an injured party, was required to exercise ordinary and reasonable care to mitigate her damages.  *Id.* at 8–10, ¶¶ 30–32.

Separately, Josue Benitez argued that he should not be held accountable for any damages that Ms. Rojas may or may not have suffered because he has "never had a conversation or deal about the house [with her.]"  *See* ECF No. 53, p. 2.  Once again representing to the Court that the Property does not belong to him, Josue Benitez argued that he should not be held liable for a property which never benefited him monetarily.  *Id.*  Ultimately, Josue Benitez felt that he has been manipulated by his family members, was only involved in this situation by mistake, and that he never intended for anyone to be harmed by allowing his brother to use his name.  *Id.*

After reviewing the evidence and all argument by each of the Parties, the Court concludes that each of the Parties make several fair points regarding the compensatory damages requested.  That being said, the Court also finds fault with each of the Parties' positions.  In light of the foregoing, the following shall constitute the Court's analysis and conclusions of law on the issue

of whether the outstanding *ad valorem* property taxes should be awarded as compensatory damages.

### a.  Who is an "Owner" of Property under the Texas Tax Code?

The Court agrees with the Debtor that the term "owner" as it is construed in the Texas Tax Code means a person or entity holding legal title to the property. *See Comerica*, 52 S.W.3d at 497. However, courts in Texas have also consistently held that an "owner" can also be someone "holding an equitable right to obtain legal title to the property." *Id*.  For instance, the Supreme Court of Texas has held:

> The person assessed [taxes] need not have a perfect or unencumbered title to the land to make the assessment legal. If he is the record owner, or is vested with the apparent legal title, *or is in possession thereof, coupled with such claims and evidences of ownership as will justify the assumption that he is the owner thereof*, the assessor will be justified in assessing the property for taxation against such owner."

*Childress County v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936) (emphasis added).  In Texas, a person or entity holds "equitable title" to a property when they possess "the present right to [compel] legal title." *Harris County Appraisal Dist. v. Southeast Texas Hous. Fin. Corp.*, 991 S.W.2d 18, 23 (Tex. App.—Amarillo 1998, no pet.); *see also Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex. App.—Austin 2004, no pet.) (discussing how a person or entity "holding equitable title to the property may be the owner for taxation purposes.").

In a situation somewhat apposite to the case at bar, in *Willacy County Appraisal District v. Sebastian Cotton & Grain, Ltd.*, the Supreme Court of Texas instructed:

> When a property owner does not ensure that the appraisal district records correctly list its name, address, and property, inaccuracies on the appraisal roll and tax roll may result. Such inaccuracies do not relieve the property owner of its tax liability; rather, under the Property Tax Code, the property owner is liable for the taxes on property it owns, even if it does not receive a tax bill or if the tax bill goes to another who is incorrectly listed as the owner. In other words, ownership gives rise to tax liability, and the appraisal roll and tax roll merely reflect such ownership – they do not establish ownership or create tax liability.

555 S.W.3d 29, 44 (Tex. 2018). Thus, the *Willacy* court clarified that despite any cloud on legal title, if a property owner holds "equitable title" to the property in question, the taxing authorities will be justified in holding that property owner liable for *ad valorem* taxes.

Here, the evidence clearly establishes that the Debtor held legal title to the Property prior to commencement of the Bankruptcy Case, but after recording the Trustee's Deed, Ms. Gomez and Josue Benitez held legal title to the Property. The evidence shows that this was never rectified. The Debtor requests that the Court declare the Trustee's Deed void *ab initio* because it was recorded in violation of the automatic stay. The Debtor has established the requisite elements for relief under 11 U.S.C. § 362(k) and the Court notes that according to the testimony and the documentary evidence, the Debtor could have demanded this relief very early in the Bankruptcy Case. Therefore, the Court concludes that the Debtor clearly "held an equitable right to obtain legal title to the [P]roperty" since the middle of 2018, at the very latest.

Further, the Court notes that, had the Defendants never commenced non-judicial foreclosure upon the Property, Ms. Rojas would, undoubtedly, have had to pay her *ad valorem* property taxes in due course. Although the Trustee's Deed created a cloud on title and the tax statements were sent to Ms. Gomez and Josue Benitez as record owners, each of the Parties were informed that the Trustee's Deed was legally invalid and Ms. Rojas maintained possession and control of the Property despite the foreclosure. Therefore, Ms. Rojas was, for the purposes of the Texas Tax Code, always the "owner" of the Property.

b.    *Does Laches or a Duty to Mitigate Damages Bar the Debtor's Recovery of Compensatory Damages?*

In theory, equitable doctrines such as laches could serve as a complete defense to a debtor's claim for damages for willful violation of the automatic stay under 11 U.S.C. § 362(k).[17] However, in cases where an equitable defense is asserted, the party asserting such a defense must not have "unclean hands." *See Precision Instrument Mfg. Co. v. Automative Maint., Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) ("A laches defense cannot be asserted by a party with unclean hands because it is inequitable.").

In the Fifth Circuit, in order for a cause of action to be barred by laches, "a defendant must establish the occurrence of (1) a delay, (2) that was not excusable, and (3) that caused the defendant undue prejudice." *See In re Gold*, 375 B.R. 316, 335 (Bankr. N.D. Tex. 2007) (Jernigan, C.J.) (gathering cases). "When a *prima facie* defense of laches is made, the burden of production shifts to the plaintiff to rebut or eliminate the presumption by demonstrating excusable delay and/or by showing lack of prejudice." *Id.* (citing *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F.Supp.2d 546, 553 (S.D. Tex. 1998)). The Court notes that "the application of the equitable defense of laches is not mandatory but is within the sound discretion of the … court, which must examine all the facts and circumstances of a particular case in its determination." *Id.* at 336.

---

[17] *See In re Baetz*, 493 B.R. 228, 238 (Bankr. D. Colo. 2013) ("[E]quitable principles may relieve a court from what is otherwise a mandatory obligation to impose sanctions for stay violations."); *but see Richardson v. Trustees of Ind. Univ. (In re Richardson)*, 497 B.R. 546, 556–58 (Bankr. S.D. Ind. 2013) (acknowledging that laches can bar a debtor's claims for willful violation of the automatic stay but concluding that the defendant did not satisfy the requirements for laches).

Here, the Court concludes that Ms. Gomez has failed to establish a *prima facie* case for application of the laches defense. Ms. Gomez points to no authority for the proposition that a plaintiff's delay in prosecuting a violation of the automatic stay is "inexcusable." *See* ECF Nos. 44 and 57. Nor could she, because, as mentioned prior, once a creditor learns that its actions have violated the automatic stay, it has an affirmative duty to "restore the status quo by undoing [the] previous action and preventing the continuation of the consequences of the stay violation." *Reed*, 154 B.R. at 476 (quoting *Wariner v. First State Bank of Livingston*, 16 B.R. 216, 218 (Bankr. N.D. Tex. 1981) (Flowers, J.)). The evidence clearly demonstrates that both Defendants were aware of the automatic stay in April of 2018. At that time, and for all of the intervening time, it was the Defendants' burden to ameliorate the violation of the automatic stay. Therefore, the Court concludes that Ms. Gomez has failed to establish a *prima facie* case for application of the laches defense.[18]

Separately, Ms. Gomez asserts that Ms. Rojas had a duty to mitigate damages. A review of case law on this issue paints a different picture. For instance, the District Court for the Northern District of Texas held, in *Nissan Motor Acceptance Corp. v. Baker*, 239 B.R. 484, 491 (N.D. Tex. 1999), that a creditor's affirmative duty to restore the status quo by returning property of the estate to the debtor overshadowed any duty the debtor may have owed the creditor to mitigate damages by pursuing a cause of action for violation of the automatic stay. Reviewing a similar situation, in *In re Garza*, the Bankruptcy Court for the Southern District of Texas concluded that "[a]ny attempt by Defendant to deflect blame onto Plaintiff for failing to mitigate damages is completely

---

[18] The Court further concludes that even were the Debtor's delay in pursuing her cause of action to be found "inexcusable," the Defendants would likely be barred from asserting a defense of laches for "unclean hands," given that their continued actions (or inaction) constituted a willful violation of the automatic stay.

overshadowed by Defendant's willful violation of the automatic stay." No. 16-70444, 2020 WL 718444 at *7 (Bankr. S.D. Tex. Feb. 12, 2020).

In the instant case, the Court concludes that the Defendants had a duty to restore the status quo for the Debtor's estate after their violation of the automatic stay. Further, the Court notes the Defendants' continued inaction in the face of that duty was clearly a willful violation of the automatic stay. Indeed, the testimony and evidence establishes that the Debtor made multiple attempts to rectify this issue without pursuing a cause of action for a willful violation of the automatic stay. Therefore, as the bankruptcy court concluded in *Garza*, this Court also concludes that any attempt by the Defendants to place blame on the Plaintiff for failing to mitigate damages is overshadowed by the Defendants' willfulness in their continued violation of the automatic stay.

### c. Calculation of Actual Damages – Ad Valorem Property Taxes

In light of the foregoing, the Court concludes that the Debtor has met her burden to prove that she has suffered actual damages with respect to the *ad valorem* property taxes. However, given the Court's previous finding that the Debtor, under Texas state law, would have also qualified as the owner of the Property throughout the Bankruptcy Case, the Court must evaluate what specific damages the Defendants are actually responsible for. As the Court concluded above, Ms. Rojas undoubtedly would have paid her property taxes in due course if the Defendants had not moved to foreclose and record the Trustee's Deed. Given that the Court's ruling on this matter will declare the Trustee's Deed void *ab initio*, the Court concludes that the Debtor should be responsible for the base *ad valorem* property taxes levied on the Property for the tax years in question: 2019 through 2023. However, the Court also concludes that the Debtor has established that she has suffered actual compensatory damages of $7,387.10 representing the total penalties, interest, and collection fees accrued between tax years 2019 and 2023. This amount is calculated

by taking the total amount represented to be due for tax years 2019–2023: $20,686.95 and subtracting the base tax balance for those years: $13,299.85.

The Court notes, after a review of the evidence and witness testimony that although Josue Benitez never received any monetary benefit from the Property, and indeed may have received some monetary detriment due to his testimony about receiving "tickets" for trash, etc. accumulated on the Property, his inaction played a key role in the continuing violation of the automatic stay. Indeed, Ms. Gomez' testimony and the evidence showed that although she was the primary driver behind the majority of the actions that were taken in violation of the automatic stay, Josue Benitez was either present for or had knowledge of, and failed to object to, many of those same actions. Therefore, the Court will assign liability for the compensatory damages on property taxes in the amount of $7,387.10 to both Defendants, jointly and severally.

2.  Compensatory Damages – Attorneys' Fees & Costs

The Debtor has further requested that the Court approve an award of attorneys' fees and costs in this case totaling $2,750.00 for Mr. Herrera's services as bankruptcy counsel and $24,300.27 for Newtons Law.  ECF No. 56, p. 5, ¶ 15(b).  Courts have determined that an award of attorneys' fees and costs under section 362(k) must be "reasonable and necessary," and that courts should "closely scrutinize the fees requested by attorneys for unnecessary and excessive charges."  *See Wilson*, 610 B.R. at 278 (quoting *In re Collier*, 410 B.R. 464, 478 (Bankr. E.D. Tex. 2009)).  Accordingly, the Court closely scrutinized the fees and expenses requested by the Debtor and, for the reasons set forth above, has determined that the $2,750.00 of fees attributable to Mr. Herrera and $24,039.27 of the fees attributable to Newtons Law were actually and necessarily

incurred and are reasonable under the facts and circumstances of this case.[19]  Therefore, the total

compensatory damages awarded shall be a composite of these figures and the $7,387.10 for

property taxes, which amounts to $34,176.37 liability for which should be assessed to Ms. Gomez

and Josue Benitez, jointly and severally.

3.  Punitive Damages

Section 362(k) allows punitive damages "in appropriate circumstances."   11 U.S.C. §

362(k)(1).   Within the Fifth Circuit, this requires "egregious, intentional misconduct on the

violator's part."  *See In re Repine*, 536 F.3d 512, 521 (5th Cir. 2008).  Egregious conduct is found

when a creditor's actions are reckless and in arrogant defiance of the automatic stay.  *See id.* (citing

*In re Lile*, 161 B.R. 788, 792 (S.D. Tex. 1993) (affirming bankruptcy court's finding of punitive

damages against IRS for actions that were reckless and in arrogant defiance of the bankruptcy

stay)).  "In determining the amount of punitive damages to award, the Court considers (1) the

degree of reprehensibility of the defendant's conduct, (2) the disparity between the harm or

potential harm to the plaintiff and the punitive damages, and (3) the difference between penalties

imposed in comparable cases."  *Wilson*, 610 B.R. at 278–79; *see also In re Lara*, 569 B.R. 231,

237 (Bankr. N.D. Tex. 2017) (Jones, J.).  Given the high level of reprehensibility in Ms. Gomez'

actions, the length of time Ms. Gomez had to remedy the violation, the fact that litigation had to

be filed to remedy the violations, and the level of penalties imposed in comparable cases, the Court

concludes that punitive damages of $5,000.00 will be imposed upon Ms. Gomez.  The burden to

restore the status quo after a violation of the automatic stay is upon the violator, plain and simple.

---

[19] The Court determined that four of the time entries in Newtons Law's Time and Expense Records [ECF No. 50-2] were not reasonably compensable under the actual and necessary standard, totaling $261.00.  The Court has reduced the award accordingly. Mr. Herrera's testimony at trial that the original motion and Complaint took him between 10 to 12 hours to draft, and that he normally bills at a rate of $250 per hour, were accepted by the Court as reasonable. Therefore, the request for $2,750.00 is reasonable as it represents 11 hours of Mr. Herrera's billable time.

Ms. Gomez was sent checks totaling almost $60,000.00 towards Ms. Rojas' debt on the Property since 2018. Yet she took no efforts to restore legal title. The fact that it has taken six years to restore proper legal title to the Property is egregious and deserved of punitive damages.

## V.    CONCLUSION.

The Debtor filed for bankruptcy protection in April of 2018 in an attempt to prevent a foreclosure sale of her home. Unfortunately, the foreclosure sale went forward in violation of the automatic stay and the Debtor lost legal title to the Property. That foreclosure sale was invalid and void *ab initio*. The Defendants had an affirmative duty to restore the status quo for the Debtor's estate. They failed to fulfill this duty, despite having hired legal representation for the express purpose of prosecuting their claim against the Debtor in the Bankruptcy Case. The Defendants' inaction over the intervening six years constitutes a willful violation of the automatic stay for which the Debtor is entitled to receive compensation for her actual damages, her reasonable attorneys' fees and costs spent in prosecuting this matter, and punitive damages.

Based upon the foregoing, and in summary, the Court will separately issue a Final Judgment:

(1) Determining that the actions of Defendants Marisol Gomez and Josue Benitez in pursuing foreclosure, recording the Trustee's Deed, and failing rectify these actions and restore status quo to the estate violated sections 362(a)(3) and (4) of the Bankruptcy Code;

(2) Determining that the actions of Defendants Marisol Gomez and Josue Benitez in contravention of sections 362(a)(3) and (4) of the Bankruptcy Code constituted actionable civil contempt for which relief may be afforded to the Debtor, Maria Rojas, under section 105(a) of the Bankruptcy Code;

(3) Determining that the Trustee's Deed is invalid and void as a result of its production in violation of the automatic stay;

(4) Awarding Maria Rojas compensatory damages against Ms. Gomez and Josue Benitez, jointly and severally, under section 362(k) of the Bankruptcy Code, and as sanctions for civil contempt, in the amount of $34,176.37;

(5) Awarding Maria Rojas punitive damages against Ms. Gomez under section 362(k) of the Bankruptcy Code in the amount of $5,000.00;

(6) Awarding Maria Rojas post-judgment interest at the applicable federal post-judgment statutory rate on the damages awarded until paid;

(7) Denying all other requested relief in the Complaint with prejudice.

**###END OF ORDER###**